# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.  4:07CR600** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LOUIS K. DAVIS,** | ) | |
| | ) | **ORDER** |
| **Defendant.** | ) | |
| | ) | |

This matter is before the Court upon two Motions to Suppress Evidence filed by Defendant Louis K. Davis.  (Dkt. # 17; Dkt. # 23).

## I. PROCEDURAL BACKGROUND

The Government filed the Indictment in the instant matter on November 27, 2007, charging the Defendant with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (Dkt. # 1).  The Defendant entered a plea of not guilty to each count of the Indictment.

On February 19, 2008, the Defendant filed a Motion to Suppress Evidence related to Count 1 of the Indictment.  (Dkt. # 17).  The Defendant filed a second Motion to Suppress Evidence related to Count 2 of the Indictment on February 28, 2008.  (Dkt. # 23).  The Government filed a response to both Motions on March 11, 2008.  (Dkt. # 25).  Pursuant to 28 U.S.C.§ 636(b)(1)(B) and LR 5.1(f), the Court referred the matter to Magistrate Judge George J. Limbert to conduct a hearing on both Motions and to issue a report and recommendation.  (Dkt. # 27).

1

Magistrate Judge Limbert consolidated the motions for hearing on April 30, 2008. On May 1, 2008, the Government moved to reopen the suppression hearing to correct the testimony of one of the Government's witnesses, Officer Robert Patton of the Youngstown Police Department.  (Dkt. # 34).  Magistrate Judge Limbert granted the Government's motion and reopened the suppression hearing on May 5, 2008.  (Dkt. # 39).  At Magistrate Judge Limbert's direction, the Defendant filed a memorandum of law on the issues raised in both Motions on May 7, 2008.  (Dkt. # 40).  The Government filed a response on May 8, 2008.  (Dkt. # 41).

On May 13, 2008, Magistrate Judge Limbert issued a report and recommendation recommending that the Court grant both of the Defendant's Motions to Suppress Evidence.  (Dkt. # 42).  The Government timely filed objections to the Magistrate Judge's report and recommendation.  (Dkt. # 45).

On June 4, 2008, the Court, *sua sponte*, recalled two Government witnesses, Mahoning County Deputy Sheriff Lawrence McLaughlin and Officer Jeff Pantall of the Struthers Police Department, for further questioning by the Court regarding the officers' participation in the events related to Count 1 of the Indictment.

## II. MOTION TO SUPPRESS EVIDENCE RELATED TO COUNT 1 OF THE INDICTMENT

The felon in possession charge in Count 1 of the Indictment is based upon the discovery of a firearm in the Defendant's vehicle following a traffic stop on October 4, 2007.  (Dkt. # 1).  The Defendant challenges the validity of the traffic stop and subsequent search under the Fourth Amendment to the United States Constitution.

2

### A. Officer Patton's Testimony

Officer Patton testified at the suppression hearing that, as a narcotics investigator for the Mahoning Valley Law Enforcement Task Force, he had set up a controlled purchase of marijuana through a cooperating source, to be conducted at a particular location in the City of Youngstown.  (Transcript of April 30, 2008, Suppression Hearing ["Tr."] at 4-5).  According to Officer Patton's testimony, he observed the target of the investigation arrive at the purchase location as a passenger in a green Lincoln Continental with Ohio license plates, exit the vehicle, complete the drug transaction, and return to the vehicle, which then departed the location.[1]  (Tr. at 5).  Officer Patton testified that while the vehicle was present at the purchase location, he determined that it was registered to the Defendant.  (Tr. at 6).

Officer Patton then testified that while he was still at the purchase location, he observed the green Lincoln return to the area approximately fifteen to twenty minutes after it had departed.  (Tr. at 9).  He followed the Lincoln in an unmarked Task Force vehicle, proceeding eastbound on Indianola Avenue in Youngstown.  (Tr. at 9-10).  On direct examination during the April 30 hearing, Officer Patton testified that while following the Lincoln, he observed the vehicle fail to come to a complete stop at a stop sign controlling eastbound traffic on Indianola at the intersection of Indianola and Homestead Avenue.  (Tr. at 10).  He then contacted Deputy Sheriff McLaughlin and Officer Pantall, who were assisting in the controlled purchase, and instructed the officers to perform a traffic stop of the Lincoln for the stop sign violation Officer Patton had

---

[1]     The Defendant was not the target of the Mahoning Valley Law Enforcement Task Force's October 4, 2007, investigation.  The target has not been identified by name in the record before the Court.

observed.  (Tr. at 10).  Officer Patton testified that he then observed the officers effect the traffic stop of the Lincoln on the Center Street bridge in Youngstown.  (Tr. at 10).  From his vehicle, Officer Patton saw Officer Pantall accompany the Defendant to the trunk of the Lincoln, and then observed Officer Pantall place the Defendant in handcuffs.  (Tr. at 11).  Officer Patton then transported the Defendant to the Task Force office.  (Tr. at 12). On cross-examination, Officer Patton confirmed that he had observed the stop sign violation at the intersection of Indianola and Homestead.  (Tr. at 14-15).

Following the Defendant's presentation at the April 30 hearing, Officer Patton was called by the Government as a rebuttal witness.  (Tr. at 51).  He again testified that the Defendant committed the stop sign violation at the intersection of Indianola and Homestead.  (Tr. at 51).  Officer Patton was unable to identify the location of the stop signs depicted in photographs marked Defense Exhibits 2 and 3.  (Tr. at 51).  The officer then drew a diagram of the intersection of Indianola and Homestead, marked Government Exhibit 1, and indicated on the diagram the location of the stop sign where he observed the violation.  (Tr. at 52-53; Gov't Ex. 1).  Officer Patton also included on the diagram the next intersection heading eastbound on Indianola, which he labeled "Poland."  (Tr. at 54; Gov't Ex. 1).

At the reopened suppression hearing on May 5, 2008, Officer Patton testified on direct examination that following the April 30 hearing, he returned to the intersection where he had observed the stop sign violation and determined that it was actually the intersection of Indianola and Homewood Avenue rather than Indianola and Homestead. (Transcript of May 5, 2008, suppression hearing ["Tr.II"] at 4).  He confirmed that there

4

is a stop sign controlling eastbound traffic on Indianola at the Homewood intersection, and stated that he believed there was a traffic light at the intersection of Indianola and Homestead.  (Tr.II at 5).  On cross-examination, Officer Patton again stated that he believed there was a traffic light at the intersection of Indianola and Homestead.  (Tr.II at 8).  Defense counsel then showed Officer Patton photographs of the intersection at Indianola and Homestead which demonstrated that there was neither a traffic light nor a stop sign controlling traffic on Indianola at the intersection.  (Tr.II at 8-9).  Officer Patton agreed that he was inaccurate as to whether a traffic light existed at Indianola and Homestead.  (Tr.II at 9).

### B. Deputy Sheriff McLaughlin's Testimony

At the April 30 suppression hearing, Deputy Sheriff McLaughlin testified that on October 4, 2007, he was working as part of the Mahoning Valley Law Enforcement Task Force in an unmarked vehicle assigned as a "take down" vehicle in a drug investigation in the City of Youngstown.  (Tr. at 18).  Deputy Sheriff McLaughlin was the driver of the unmarked vehicle, accompanied by Officer Pantall.  (Tr. at 18).

On direct examination, Deputy Sheriff McLaughlin testified that in the course of the drug investigation, he conducted a traffic stop of a green Lincoln Continental with Ohio license plates.  (Tr. at 19).  Deputy Sheriff McLaughlin stated that the traffic stop was made at the direction of Officer Patton for a stop sign violation, and that the stop occurred on the Center Street bridge in Youngstown at approximately 3:00p.m.  (Tr. at 18-19).  He further testified that he did not personally observe the stop sign violation. (Tr. at 18-19).  At the June 4, 2008, hearing, Deputy Sheriff McLaughlin testified that he

5

and Officer Pantall were travelling eastbound on Indianola, approximately five cars behind the green Lincoln and three cars behind Officer Patton's vehicle when Officer Patton instructed them to make the traffic stop.  (Transcript of June 4, 2008, suppression hearing ["Tr.III"] at 6-7).  According to Deputy Sheriff McLaughlin, Officer Patton then pulled over and allowed Deputy Sheriff McLaughlin to go around him in order to perform the traffic stop on the green Lincoln.  (Tr.III at 8).  Deputy Sheriff McLaughlin stated that the green Lincoln turned right at the end of Indianola onto Poland Avenue and moved into the turning lane to turn left onto Center Street.  (Tr.III at 8).  The officers got behind the Lincoln in the turning lane on Poland Avenue, followed the vehicle onto Center Street, and made the traffic stop on the Center Street bridge.  (Tr. III at 8).

Once the green Lincoln was stopped, Deputy Sheriff McLaughlin approached the driver's side of the vehicle, advised driver that he was stopped for a stop sign violation, and asked for the driver's license, insurance, and registration.  (Tr. at 20).  The driver, whom Deputy Sheriff McLaughlin identified as the Defendant, stated that his license was in the trunk of the vehicle, at which point Deputy Sheriff McLaughlin allowed the Defendant to exit the vehicle to retrieve the license.  (Tr. at 20).  Officer Pantall was positioned at the rear of the vehicle with the Defendant.  (Tr. at 20).  Deputy Sheriff McLaughlin testified that after a few minutes, he observed Officer Pantall place the Defendant under arrest.  (Tr. at 21).  When Deputy Sheriff McLaughlin looked back at the trunk, he observed marijuana and money in the trunk.  (Tr. at 21).

On cross-examination at the April 30 hearing, Deputy Sheriff McLaughlin testified that the stop sign violation occurred at the intersection of Indianola and

Homestead.  (Tr. at 22-26).  Defense counsel then indicated the intersection of Indianola and Homestead on a map of the area, marked Defense Exhibit 1, and asked Deputy Sheriff McLaughlin whether that was the intersection where the violation had occurred. Deputy Sheriff McLaughlin confirmed that it was.  (Tr. at 26).  On redirect examination, Deputy Sheriff McLaughlin estimated the distance between Homestead and Poland Avenue as a "couple hundred feet" and "not very far at all."  (Tr. at 27).

### C. Officer Pantall's Testimony

At the April 30 hearing, Officer Pantall testified that he and Deputy Sheriff McLaughlin were assisting in a controlled drug purchase on October 4, 2007.  (Tr. at 29). Officer Pantall stated that the officers performed a traffic stop on a green Lincoln with Ohio license plates on the Center Street bridge in Youngstown.  (Tr. at 30).  At the June 4 hearing, Officer Pantall testified that he and Deputy Sheriff McLaughlin were part of the surveillance team following the green Lincoln after the controlled drug purchase.  (Tr.III at 11-16).  He stated that Officer Patton informed the surveillance team by radio that the Lincoln had failed to observe a stop sign, and instructed Officer Pantall and Deputy Sheriff McLaughlin to stop the vehicle.  (Tr.III at 14-15).  Officer Pantall stated that he and Deputy Sheriff McLaughlin were approximately two cars behind Officer Patton at that time, and that they went around Officer Patton's vehicle as they crossed the freeway overpass on Indianola.  (Tr.III at 15).  After passing Officer Patton, Officer Pantall observed the green Lincoln making a right turn onto Poland Avenue.  (Tr.III at 16).  The officers pulled behind the Lincoln in the turning lane on Poland Avenue, followed the

7

vehicle as it turned left onto Center Street, and then conducted the traffic stop on the Center Street bridge. (Tr.III at 16).

According to Officer Pantall, once the vehicle was stopped, he approached the vehicle on the rear passenger side while Deputy Sheriff McLaughlin went to the driver's side. (Tr. at 31). Officer Pantall heard Deputy Sheriff McLaughlin advise the driver that he was stopped for the stop sign violation and ask for identification, which the driver responded was in the trunk of the vehicle. (Tr. at 31). Officer Pantall stated that he was standing behind the driver when the driver opened the trunk, and that the officer saw cash strewn across the trunk and then detected the odor of marijuana. (Tr. at 31). Officer Pantall testified that he then observed what appeared to be marijuana in a plastic bag in the trunk. (Tr. at 32). At that time, Officer Pantall placed the driver, whom he identified as the Defendant, under arrest. (Tr. at 33).

Officer Pantall further testified that because traffic was heavy at the scene of the stop, the drug Task Force decided to transport the vehicle to the Task Force office. (Tr. at 33). Officer Pantall drove the green Lincoln to the Task Force office, where it was searched prior to being impounded. (Tr. at 33). The search revealed a .40 caliber Smith & Wesson semi-automatic handgun under the driver's seat along with the Defendant's driver's license. (Tr. at 34).

On cross-examination, Officer Pantall confirmed that the reason for the traffic stop was the stop sign violation, but also noted that the officers were aware that the green Lincoln had been involved in a controlled drug purchase just prior to the traffic stop. (Tr. at 35).

8

**D. Gerald Salter's Testimony**

Following the Government's case in chief at the April 30 hearing, the Defendant called Gerald Salter as a witness.  (Tr. at 37).  Mr. Salter testified that he was at the Defendant's home on October 4, 2007, performing a tune up and oil change on the Defendant's car, the green Lincoln Continental.  (Tr. at 38).  When Mr. Salter was finished working on the car, the Defendant began to drive him home in the green Lincoln, on a route along Indianola Avenue.  (Tr. at 38).  Mr. Salter testified that the two proceeded down Indianola past Homestead, but stated that the Defendant could not have run a stop sign at the intersection of Indianola and Homestead because no stop sign existed at that location.  (Tr. at 40).  Defense counsel then introduced photographs of the intersection at Indianola and Homestead, marked Defense Exhibits 2 through 4, which demonstrate that no stop sign controls eastbound traffic on Indianola at that intersection. (Tr. at 42-45).

On cross-examination, Mr. Salter testified that he had worked on the Defendant's vehicle from approximately 10:00a.m. until approximately 2:00p.m. on October 4, and that neither the vehicle nor the Defendant left the Defendant's house during that time. (Tr. at 46).  Mr. Salter further stated that he had been inside the passenger compartment of the vehicle while he was performing the maintenance, but that he had not accessed the trunk.  (Tr. at 47).  He testified that neither the marijuana, the cash, nor the firearm discovered in the green Lincoln belonged to him.  (Tr. at 49).

### E. Magistrate Judge Limbert's Report and Recommendation

Magistrate Judge Limbert issued a report and recommendation recommending that the Court grant the Defendant's Motion to Suppress Evidence related to Count 1. (Dkt. # 42). The Magistrate Judge based his recommendation on a lack of probable cause for the traffic stop that led to the discovery of the firearm in the Defendant's vehicle. (Dkt. # 42 at 8). Magistrate Judge Limbert found that Officer Patton's testimony was not credible because of inconsistent testimony regarding the street names at the intersection where Officer Patton testified that he observed the stop sign violation, as well as inaccuracies as to the presence of a traffic light at the intersection of Indianola and Homestead. (Dkt. # 42 at 8-10). Additionally, the Magistrate Judge determined that the testimony of Deputy Sheriff McLaughlin and Officer Pantall was not credible based upon the officers' failure to realize and correct their error as to the location of the stop sign violation that led to the traffic stop, despite their significant experience as officers. (Dkt. # 42 at 12).

The officers' apparent lack of credibility led to the Magistrate Judge's finding that the Government had failed to establish by a preponderance of the evidence that Officer Patton actually observed a traffic violation occur. (Dkt. # 42 at 10). As such, Magistrate Judge Limbert determined that the Government had failed to demonstrate probable cause for the traffic stop, and recommended that the evidence of the firearm discovered in the Defendant's vehicle be suppressed as derivative evidence pursuant to Wong Sun v. United States, 371 U.S. 471 (1963). (Dkt. # 42 at 10-13).

Magistrate Judge Limbert further recommended that the search of the Defendant's vehicle could not be justified either as a search incident to arrest, a search conducted under exigent circumstances, or as an inventory search.  (Dkt. # 42 at 15-19).

For the reasons that follow, the Court DECLINES to adopt Magistrate Judge Limbert's Report and Recommendation with respect to the Defendant's Motion to Suppress Evidence related to Count 1 of the Indictment.  (Dkt. # 42).

### F. Fourth Amendment Analysis

In his Motion to Suppress Evidence related to Count 1, the Defendant contends that the "evidence that was seized is the fruit of an unconstitutional search and seizure [in violation] of the rights guaranteed by the Fourth Amendment of [sic] the United States Constitution."  (Dkt. # 17).  "'It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.'"  United States v. Rodriguez-Suazo, 346 F.3d 637, 643 (6th Cir. 2003) (quoting United States v. Feldman, 606 F.2d 673, 679 n.11 (6th Cir. 1979)).

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S CONST. amend. IV.  The warrant requirement protects against unreasonable intrusions by government agents by ensuring: (1) that a neutral and detached officer of the judiciary measure the probable cause asserted; and that (2) "those searches deemed necessary should be as limited as possible." Coolidge v. New Hampshire, 403 U.S. 443,

11

467 (1971).  See also Johnson v. United States, 333 U.S. 10, 14 (1948) ("The point of the Fourth Amendment…is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence.  Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").

### 1. The traffic stop of the Defendant's vehicle was supported by probable cause.

Warrantless searches and seizures are per se unreasonable, subject to a limited number of exceptions.  See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Minnesota v. Dickerson, 508 U.S. 366 (1993).  Thus, where a defendant demonstrates that a warrantless search or seizure has occurred, the burden shifts to the government to prove that an exception applies.  United States v. Herndon, 501 F.3d 683, 692 (6th Cir. 2007).  One such exception to the warrant requirement allows a law enforcement officer to stop an automobile where the officer has probable cause to believe that a traffic violation has occurred.  Whren v. United States, 517 U.S. 806, 809-810 (1996) (citing Delaware v. Prouse, 440 U.S. 648, 659 (1979)).

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."  United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).  The United States Supreme Court has shown an "unwilling[ness] to entertain Fourth Amendment challenges based on the actual motivations of individual officers," and has noted that an officer's "[s]ubjective intentions play no role in ordinary,

probable-cause Fourth Amendment analysis." <u>Whren</u>, 517 U.S. at 813. Therefore, whether an officer has probable cause to effect a traffic stop based upon a traffic violation depends solely on whether "the circumstances, viewed objectively, justify that action." <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978).

In the instant case, Officer Patton testified that he observed the Defendant's vehicle fail to come to a complete stop at a stop sign. (Tr. at 10). Based on that observation, he instructed Deputy Sheriff McLaughlin and Officer Pantall to effect a traffic stop of the Defendant's vehicle for a stop sign violation. (Tr. at 10, 18-19; Tr.III at 14-15). It is clear that an officer's observation of a traffic violation is sufficient to provide probable cause for a traffic stop. <u>See</u> <u>Whren</u>, 517 U.S. at 809-810. Furthermore, it is well-settled in the Sixth Circuit "that probable cause may be established from the collective knowledge of the police," rather than solely from the officer who actually made the stop. <u>Collins v. Nagle</u>, 892 F.2d 489, 495 (6th Cir. 1989); <u>see also</u> <u>United States v. Mullins</u>, 47 F.3d 1171, *6 (6th Cir. 1995). Therefore, if Officer Patton had probable cause to effect a traffic stop of the Defendant's vehicle, the officers who actually made the stop were justified in doing so based upon the information obtained from Officer Patton.

Magistrate Judge Limbert found that the officers' testimony regarding the stop sign violation was not credible and, thus, failed to show that probable cause existed for the traffic stop. Specifically, the Magistrate Judge found that all three officers' inconsistent testimony as to the street names at the intersection where the stop sign violation allegedly occurred, coupled with inaccuracies in Officer Patton's testimony at

13

the May 1 hearing, rendered the traffic stop unconstitutional.  Based upon a *de novo* review, the Court finds that the record does not support the Magistrate Judge's conclusion.

First, though Officer Patton testified at the April 30 hearing that the stop sign violation occurred at the intersection of Indianola and Homestead, he gave the following description of the violation:

> I was following the Lincoln eastbound on Indianola Avenue.  As it crossed over the overpass of [Interstate] 680, there is a stop sign at Homestead.  He failed to come to a complete stop at that location.

(Tr. at 10).   Officer Patton further testified on redirect examination:

> Poland Avenue is the next intersection to the east or northeast [in relation to Homestead].  Because Indianola starts to turn and then it comes down the hill and T-bones into Poland Avenue.

(Tr. at 15).  Finally, when asked by defense counsel whether Indianola and Homestead intersect, Officer Patton explained:

> Indianola and Homestead cross at [Interstate] 680.   And then the next intersection to the east is Poland Avenue.

(Tr. at 16).  Though incorrect as to the street name, Officer Patton's descriptions clearly refer to the intersection of Indianola and Homewood, which is immediately east of the Interstate 680 overpass and is the intersection immediately west of Poland Avenue.  (See Gov't Ex. 2; see also Def. Ex. 1).  By contrast, Homestead is approximately three-quarters of a mile west of the Interstate 680 overpass, and there are at least ten intersections on Indianola between Homestead and Poland.  (See Id.)

14

On rebuttal at the April 30 hearing, Officer Patton drew a diagram of the area where he observed the stop sign violation.  (Gov't Ex. 1).  That diagram shows Indianola running in an east-west direction, with a perpendicular cross-street labeled "Homestead." (Id).  Indianola continues through that intersection and ends at another perpendicular street labeled "Poland."  (Id).  There are no streets intersecting with Indianola between those labeled "Homestead" and "Poland" on the diagram.  (Id).  Stop signs are indicated by a circle at each intersection.  (Id).  Viewed in conjunction with Government's Exhibit 2 and Defense Exhibit 1, Officer Patton's diagram indicates that he was actually describing the intersection of Indianola and Homewood, which he incorrectly labeled as "Homestead" on the diagram.

Deputy Sheriff McLaughlin also testified on cross examination at the April 30 hearing that the stop sign violation occurred at the intersection of Indianola and Homestead.  (Tr. at 22).  He identified the intersection of Indianola and Homestead on a map of the area, and confirmed that the violation occurred at that intersection.  (Tr. at 26). On redirect examination, however, Deputy Sheriff McLaughlin was asked to estimate the distance between the intersection of Indianola and Homestead and the location of the traffic stop on Center Street.  He gave the following response:

> Well, by the time I could get behind [the Defendant], you have to remember Indianola runs downhill into Poland Avenue, and then by the time we could get behind him, from Homestead to the bottom then there is, I don't know, couple hundred feet.  It's not very far at all.  And then right on to Poland Avenue, left on to Center Street where I was able to effectively execute a traffic stop.

(Tr. at 27).  Deputy Sheriff McLaughlin's testimony that the distance between the intersection where the violation occurred and the bottom of Indianola is "not very far at all" simply does not describe the intersection of Indianola and Homestead, which is more than three-quarters of a mile west of the bottom of Indianola.  (See Gov't Ex. 2; see also Def. Ex. 1).  The officer's description of the location matches that of the intersection of Indianola and Homewood, which is a "couple hundred feet" from the bottom of Indianola, where the Defendant turned "right on to Poland Avenue."  (Id).

Finally, Magistrate Judge Limbert found that Officer Patton's testimony lacked credibility "because [he] testified that he visited the intersection of Homestead and Indianola following the first suppression hearing and concluded that he could not have observed the stop sign violation there because the intersection is controlled by a traffic light instead of a stop sign."  (Dkt. # 42 at 8).  Because the evidence shows that no traffic light exists at the intersection of Indianola and Homestead, the Magistrate Judge determined that such an inaccuracy calls the officer's entire testimony into question.  A review of Officer Patton's testimony from the May 5 hearing, however, demonstrates that Officer Patton did not testify that he revisited the intersection of Indianola and Homestead.  Rather, Officer Patton gave the following testimony on direct examination:

> Q    And at the [April 30 hearing] you testified that there had been a moving violation, a stop sign violation involving the defendant's vehicle at the intersection of Indianola and Homestead Avenue; is that correct?
>
> A    That's correct.
>
> Q    And what did you do in relation to that?

16

A       In relation to that I was able to determine that the Homestead was actually Homewood, and it was improperly reflected in the reports that were generated from the traffic stop and from the arrest that occurred after the traffic stop.

Q       Did you actually go out to the scene last week to see where the area was *where you had observed the moving violation* involving the defendant's vehicle?

A       That's correct.  As soon as I left the courtroom.

Q       Is that when you noted the error?

A       That's correct.

Q       Okay.  Is there a stop sign on the intersection of Indianola and Homewood Avenue?

A       There is.

Q       Is there a traffic light on the intersection of Indianola and Homestead Avenue?

A       I believe so, yes.

(Tr.II at 4-5)(emphasis added).  Officer Patton was asked again on cross-examination about a traffic light at the intersection of Indianola and Homestead:

Q       You indicated that there is a traffic light at the intersection of Homestead and Indianola?

A       I said I believe so.

(Tr.II at 8).  Officer Patton's testimony from the May 5 hearing demonstrates only that he returned to the location where he observed the stop sign violation, which the record shows was actually the intersection of Indianola and Homewood.  The officer's testimony does not indicate, however, that he returned to the intersection of Indianola and Homestead, where he did not observe a violation.  Furthermore, Officer Patton did not

17

specify that he visited Indianola and Homestead to confirm the existence of a traffic light at that intersection, nor that the existence of such a traffic light helped him to realize the error in his earlier testimony.[2]

Upon a *de novo* review of the record, the Court finds that the inaccuracies in the testimony of Officer Patton, Deputy Sheriff McLaughlin, and Officer Pantall do not render such testimony not credible.  The primary inaccuracy in the officers' testimony was the name of the intersection where Officer Patton observed the stop sign violation. However, the descriptions given by Officer Patton and Deputy Sheriff McLaughlin of the intersection at which the violation occurred and of the events leading to the traffic stop demonstrate by a preponderance of the evidence that Officer Patton observed a traffic violation, namely a stop sign violation, at the intersection of Indianola Avenue and Homewood Avenue.  That observation provided probable cause to perform a traffic stop of the Defendant's vehicle.  See Whren, 517 U.S. at 809-810.

Based upon the foregoing, the Court DECLINES to adopt the Magistrate Judge's recommendation that the Court find that the officers lacked probable cause to stop the Defendant's vehicle for a traffic violation.

---

[2]     The Court notes, as did the Magistrate Judge's report and recommendation, that the Government's Motion to Reopen Suppression Hearing Testimony indicates that, upon revisiting the area of the traffic violation, Officer Patton realized that the intersection of Indianola and Homestead is controlled by a traffic light. (Dkt. # 34 at 2).  Nevertheless, neither Officer Patton's testimony nor any other evidence before the Court indicates that Officer Patton returned to Indianola and Homestead to verify the existence of a traffic light, or that the officer relied on such facts in correcting his earlier testimony.

> **2. Officer Pantall's discovery of marijuana and currency in the trunk of the Defendant's vehicle was valid under the plain view exception to the warrant requirement of the Fourth Amendment.**

Having found that the traffic stop of the Defendant's vehicle was supported by probable cause, the Court must determine whether the subsequent search of the vehicle was reasonable under the Fourth Amendment.  As Magistrate Judge Limbert noted, the search of the Defendant's vehicle arose from the discovery of marijuana and currency in the trunk of the vehicle during the traffic stop.  The Magistrate Judge concluded that no Fourth Amendment violation occurred in Officer Pantall's viewing the marijuana and currency.  The Court agrees with the Magistrate Judge's determination.

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant."  Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971).  For the police to conduct a valid plain view search, two requirements must be met: "(1) the incriminating nature of the item in plain view must be 'immediately apparent,' and (2) the officer must be lawfully located in a position from which he or she can plainly see the item and have lawful access to it."  United States v. Bradshaw, 102 F.3d 204, 211 (6th Cir.1996) (citing Horton v. California, 496 U.S. 128, 136-37 (1990); see United States v. Riascos-Suarez, 73 F.3d 616, 625 (6th Cir.1996) ("A search and seizure is valid if an officer sees an incriminating object while lawfully standing in an area from which the object is plainly visible.").  See also United States v. Walker, 181 F.3d 774, 779 (6th Cir.1999) ("The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage

19

point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment.").

Based upon the foregoing, the Court finds that Officer Pantall's discovery of marijuana and currency in the trunk of the Defendant's vehicle was valid under the plain view exception to the warrant requirement of the Fourth Amendment.   First, the incriminating nature of the items was immediately apparent.  Both officers testified that the marijuana and currency were immediately visible without moving anything in the trunk, and that the marijuana was in a plastic bag and readily identifiable based upon the officers' law enforcement experience.  (Tr. at 21, 32).  Officer Pantall also testified that he detected the odor of marijuana when the trunk was opened.  (Tr. at 31).  Furthermore, the proximity of the currency to the marijuana made the incriminating nature of the currency apparent.

Next, Officer Pantall was lawfully in a position to view the contraband in the trunk and to have access to it.  Officer Pantall testified, and the Defendant does not dispute, that he observed the marijuana and currency when the Defendant opened the trunk of his vehicle in order to retrieve his driver's license.   (Tr. at 31-32).   According to the testimony of both Officer Pantall and Deputy Sheriff McLaughlin, Officer Pantall was positioned at the rear of the vehicle, behind the Defendant when the Defendant opened the trunk.  (Tr. at 20, 31).  Because the officers had approached the vehicle as part of a traffic stop which was supported by probable cause, Officer Patton was lawfully in such a position, and his discovery of contraband in the trunk of the Defendant's vehicle falls under the plain view exception.

20

### 3. The search of the Defendant's vehicle was lawful under the automobile exception to the warrant requirement of the Fourth Amendment.

"[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." United States v. Ross, 456 U.S. 798, 823 (1982).  Thus, a warrantless search of an automobile is valid where an officer has probable cause to believe that the automobile contains items subject to seizure.  Carroll v. United States, 267 U.S. 132, 149 (1925); see also Chambers v. Maroney, 399 U.S. 42, 48-51 (1970).  A vehicle search based upon probable cause to believe the vehicle contains contraband is distinct from a warrantless search based upon exigent circumstances.  Michigan v. Thomas, 458 U.S. 259, 261 (1982)(per curiam).  "A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search."  United States v. Johns, 469 U.S. 478, 484 (1985).  The scope of a warrantless vehicle search based upon probable cause extends to "every part of the vehicle and its contents that may conceal the object of the search."  Ross, 456 U.S. at 825.

In the instant case, the discovery of marijuana and currency in the trunk of the Defendant's vehicle provided probable cause to believe that the vehicle contained contraband.  A warrantless search of the vehicle was, therefore, valid under the automobile exception to the warrant requirement of the Fourth Amendment.  The officers in the instant case, however, did not conduct a search at the scene of the traffic stop because of heavy traffic on the Center Street bridge at 3:00p.m. when the stop was

21

conducted.  (Tr. at 33).  Instead, Officer Pantall drove the vehicle to the Task Force office to be searched prior to being impounded.  (Tr. at 33).  Magistrate Judge Limbert found that the testimony failed to establish when the vehicle was searched once it was moved to the Task Force office, and that the search was invalid absent evidence that it occurred in a timely fashion.  (Dkt. # 42 at 16-17).

The Supreme Court of the United States has specifically rejected temporal restrictions on automobile searches based upon probable cause to believe a vehicle contains contraband.  Johns, 469 U.S. at 484.  In reversing a Ninth Circuit ruling that a warrantless automobile search was invalid because it did not occur immediately as part of a vehicle inspection or soon thereafter, the Court stated, "Neither Ross nor our other vehicle search cases suggest any such limitation."  Id.  The Court in Johns upheld a vehicle search by Drug Enforcement Agency officers where the search was supported by probable cause but did not occur until three days after the vehicles were seized and had been transported one hundred miles to DEA headquarters, where the packages to be searched were removed and placed in DEA storage prior to being searched.  Id.  The Court explained that "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure."  Id. (citing Texas v. White, 423 U.S. 67, 68 (1975)(per curiam)).[3]

---

[3]       In his report and recommendation, Magistrate Judge Limbert cites the Fifth Circuit's decision in Barnett v. United States, 384 F.2d 848, 860-61 (5th Cir. 1967) for the proposition that a warrantless vehicle search must be conducted in a timely fashion.  The Court in Barnett specifically noted, however, that "[t]he state officers did not have probable cause to believe the vehicle contained contraband subject to seizure; a search of a moving vehicle may not be conducted on mere suspicion."  Id.  Therefore, the search in that case did not fall under the automobile exception.  Barnett is thus distinguishable from the instant case.

Based upon the foregoing, the search of the Defendant's vehicle in the instant case was valid under the automobile exception to the warrant requirement of the Fourth Amendment.  Having discovered marijuana and currency, the officers had probable cause to believe that the vehicle contained contraband.  In addition, because of heavy traffic at the location of the stop, it was not unreasonable for the officers to move the vehicle to the Task Force office prior to conducting the search.  See Chambers, 399 U.S. 42, 52 n.10 (noting that it was not unreasonable for officers to move a vehicle to the station house prior to search, where the vehicle was seized in a dark parking lot in the middle of the night).  The absence of specific testimony regarding when the search was conducted does not render the automobile exception inapplicable.[4]

### 4. Conclusion

For the foregoing reasons, the Court **DECLINES** to adopt Magistrate Judge Limbert's report and recommendation with respect to the Defendant's Motion to Suppress Evidence related to Count 1 of the Indictment.  (Dkt. # 42).  Rather, the Court finds by a preponderance of the evidence that the traffic stop of the Defendant's vehicle was supported by probable cause to believe that a traffic violation had occurred, and that the subsequent search of the vehicle was valid under the automobile exception to the warrant requirement of the Fourth Amendment.  Therefore, suppression of the evidence discovered in the course of the search of the Defendant's vehicle is not warranted.

---

[4]  The Court notes that Magistrate Judge Limbert determined that the search of the Defendant's vehicle could not be justified as an inventory search because of the absence of testimony describing Task Force inventory search procedures.  Because the Court finds that the search was valid under the automobile exception, it is not necessary to reach the validity of the search as an inventory search.

Therefore, the Defendant's Motion to Suppress Evidence related to Count 1 of the Indictment is hereby **DENIED**.  (Dkt. # 17)

## III. MOTION TO SUPPRESS EVIDENCE RELATED TO COUNT 2 OF THE INDICTMENT

The Court has reviewed the report and recommendation of the Magistrate Judge with respect to the Defendant's Motion to Suppress Evidence related to Count 2 of the Indictment *de novo*, and finds that it is well-supported.  Furthermore, the Court has reviewed the Government's objections to the report and recommendation with respect to the Defendant's Motion to Suppress Evidence related to Count 2 of the Indictment and finds that they are without merit.

Therefore, Magistrate Judge Limbert's report and recommendation regarding the Defendant's Motion to Suppress Evidence related to Count 2 of the Indictment is hereby **ADOPTED**.   (Dkt. # 42).   The Defendant's Motion to Suppress Evidence related to Count 2 of the Indictment is hereby **GRANTED**.

## IV. CONCLUSION

Based upon the foregoing, the Court hereby **DECLINES** in part and **ADOPTS** in part the report and recommendation of Magistrate Judge Limbert. (Dkt. # 42).  The Court **DECLINES** to adopt the Magistrate Judge's report and recommendation with respect to the Defendant's Motion to Suppress Evidence related to Count 1 of the Indictment.  Said Motion is hereby **DENIED**.  (Dkt. # 17).

The Magistrate Judge's report and recommendation is **ADOPTED** with respect to Defendant's Motion to Suppress Evidence related to Count 2 of the Indictment.  Said Motion is hereby **GRANTED**.  (Dkt. # 23).

**IT IS SO ORDERED**.

<u>**/s/ Peter C. Economus – June 18, 2008**</u>
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**